UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ERVIN ATKINS JR.,

    Plaintiff,

v.

CORDOBA LEGAL GROUP LLC,

    Defendant.

Case No. 9:25-cv-80029

## COMPLAINT

Now comes ERVIN ATKINS JR. ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CORDOBA LEGAL GROUP LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* the Florida Credit Services Organizations Act ("FCSOA") under Fla. Stat. § 817.700 *et seq.*, as well as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under Fla. Stat. § 501.201 *et seq.,* stemming from Defendant's unlawful conduct.

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Southern District of Florida.

**PARTIES**

4. Plaintiff is a consumer over 18 years of age residing in Clearwater, Florida.

5. Defendant is a law firm, credit repair organization, and debt settlement provider that claims to assist consumers with their credit issues by offering their services in negotiating down the amount of debt owed so that consumers can address these debts and ultimately become debt free. Defendant is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 102 NE 2nd Street, Unit 252, Boca Raton, Florida 33432.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. Towards the end of 2022, Plaintiff was interested in attempting to resolve a number of debts which were impacting his credit, and subsequently began looking into various credit repair and debt settlement companies for assistance.

8. Plaintiff subsequently happened upon Defendant.

9. Plaintiff was informed that Defendant's services included reaching negotiated settlements with Plaintiff's creditors, which would allow Plaintiff to resolve these obligations by paying less than he would otherwise pay, in turn improving his credit history by assisting him in resolving his debts which would positively impact his debt to income ratio.

10. Defendant further represented that once Plaintiff agreed to work with Defendant, all of his creditors would stop calling and instead work with Defendant to resolve the debts.

11. Defendant further informed Plaintiff that although his credit score would be initially impacted by using Defendant's services, once Plaintiff successfully completed Defendant's program, Plaintiff's credit would improve as Defendant's program would result in him being debt free and resolving obligations that would otherwise remain unresolved and subject to further interest charges.

12. Finding the nature of Defendant's represented services desirable, Plaintiff agreed to utilize Defendant's services, and entered into a contract for the provision of such services.

13. Plaintiff then began making his monthly payments which totaled approximately $320 each month.

14. Upon information and belief, Defendant charged Plaintiff for "legal" services that were unnecessary and were charged before Defendant fully completed any services that would have justified its retention of such fees.

15. After Plaintiff signed up for Defendant's program, he was told to completely cease speaking with or paying his creditors, and to instead divert those payments to Defendant for its services.

16. Defendant failed to adequately and completely explain this aspect of its services to Plaintiff when Plaintiff was considering whether to use Defendant's services, and further suggested that Plaintiff's monthly payments would go towards Defendant taking over the payments Plaintiff was making to his creditors.

17. Plaintiff persisted in making his payments to Defendant for years.

18. Notwithstanding Plaintiff maintaining his payments for years, Defendant subsequently failed to deliver the results or services in the manner represented.

19. Defendant failed to take over payments to Plaintiff's creditors, instead allowing Plaintiff's obligations to go into default.

20. As a result, at least one of Plaintiff's obligations were sent to collections.

21. Plaintiff was not adequately nor completely apprised of this potential ramification of Defendant's services given Defendant's leading Plaintiff to believe his payments would be going to his creditors.

22. Upon information and belief, rather than payments going towards Plaintiff's creditors, the payments were being retained by Defendant for its services despite not performing or completely performing the services justifying its retention of the payments.

23. Plaintiff subsequently spoke with Defendant about its services, at which point Plaintiff realized that, contrary to Defendant's representations, his monthly payments were not being applied or appropriated in the manner Defendant represented.

24. As a result of Defendant's misrepresentations and mishandling of Plaintiff's funds, Plaintiff cancelled his agreement in approximately May of 2024.

25. Notwithstanding Plaintiff's cancelling his agreement with Defendant, Defendant failed to refund Plaintiff for payments made in connection with services Defendant failed to completely perform for Plaintiff.

26. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

27. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair and debt settlement organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

28. Plaintiff repeats and realleges paragraphs 1 through 27 as though fully set forth herein.

29. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

30. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

31. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

32. Defendant violated the above provisions of the CROA through its deceptive and misleading representations regarding the nature of its services and where exactly Plaintiff's payments would be going. Defendant represented and suggested that Plaintiff's monthly payments were going towards paying down all of his enrolled debts, only for Defendant to fail to apply Plaintiff's payments in the manner represented.

33. Defendant violated the CROA through its deceptive and misleading instruction that Plaintiff's best course of action would be to cease paying his creditors and instead divert those funds to Defendant. Defendant failed to completely and adequately explain this aspect of its services to Plaintiff and the potential ramifications thereof.

34. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it was providing Plaintiff and/or could provide Plaintiff. Defendant represented that, so long as Plaintiff made his monthly payments to Defendant, Defendant would actively be working to resolve the enrolled debts, yet Defendant failed to do so and failed to work with Plaintiff's creditors in the manner represented.

35. Defendant further violated the CROA through its conduct in making certain representations regarding its services in order to get Plaintiff on the hook for services, only to cut against those representations through its contractual language.

    **b.**    **Violations of CROA § 1679b(b)**

36. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Upon information and belief, Defendant charges consumers upfront fees before any services are performed, let alone fully performed. Defendant further failed to refund Plaintiff for payments made in connection with services Defendant ultimately failed to perform, let alone completely perform, for Plaintiff.

### c. Violation of CROA § 1679c

38. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

39. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c.

### d. Violation of CROA § 1679d(4)

40. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between consumers and credit repair organizations.

41. Defendant violated § 1679d through the nature of its noncompliant contract.

42. As a result of Defendant's deficient contract, the contract should be deemed void and unenforceable. 15 U.S.C. § 1679f(c).

### e. Violation of CROA § 1679f(b)

43. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection

9

provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

44. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. Defendant's contract contains a number of provisions which improperly attempt to cause Plaintiff to waive the protections provided by the CROA.

45. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, ERVIN ATKINS JR., respectfully requests that the Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e. Awarding any other relief as the Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

46. Plaintiff restates and realleges paragraphs 1 through 27 as though fully set forth herein.

47. Plaintiff is a "buyer" as defined by Fla. Stat. § 817.7001(1).

48. Defendant is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a)..

**a.  Violation of FCSOA § 817.7005**

49. The FCSOA, pursuant to Fla. Stat. § 817.7005, provides a list of prohibited conduct for credit services organizations.

50. Pursuant to Fla. Stat. § 817.7005(1), a credit service organization must not charge or receive any money or other consideration prior to full and complete performance of its services, unless it has maintained a surety bond with the state, in which case the sums paid must be retained until full performance of the services are rendered.

51. Defendant violated Fla. Stat. § 817.7005(a) through its charging Plaintiff prior to full and complete performance of its services.

52. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or

11

would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer."

53. As outlined above, Defendant violated the above referenced provision of the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### b. Violation of FCSOA § 817.702

54. The FCSOA, pursuant to Fla. Stat. § 817.702, outlines the nature of information and disclosures that must be provided to consumers when contracting and receiving payment.

55. Defendant violated § 817.702 by failing to provide the requisite information and disclosures.

### c. Violations of FCSOA § 817.705

56. The FCSOA, pursuant to Fla. Stat. § 817.705(1), provides that "[a]ny attempt by a credit service organization to have a buyer waive rights given by this part is a violation of this part."

57. Defendant violated the above provision of the FCSOA in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff ERVIN ATKINS JR., respectfully requests that the Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b.       Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

    c.       Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

    d.       Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

    e.       Awarding any other relief as the Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FDUTPA

58. Plaintiff restates and realleges paragraphs 1 through 27 as though fully set forth herein.

59. The transactions giving rise to these claims constitute "trade or commerce" as defined by Fla. Stat. § 501.203(8).

60. Pursuant to the FDUTPA § 501.204(1), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

61. The provisions of the FDUTPA "shall be construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

62. Violations of the FDUTPA further consider the rules promulgated in connection with the Federal Trade Commission Act, the standards of unfairness and

deception set forth and interpreted by the Federal Trade Commission or the federal courts, as well as any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices. *See* Fla. Stat. § 501.203.

63. Defendant violated § 501.204(1) through the unfair and deceptive nature of the conduct directed towards Plaintiff, discussed at length above.

WHEREFORE, Plaintiff, ERVIN ATKINS JR., respectfully requests that the Court enter judgment in his favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff his actual damages in an amount to be determined at trial pursuant to the Fla. Stat. § 501.211(2);

c. Enter a declaratory judgment finding that the above referenced conduct is in violation of the above referenced statutes and regulations, pursuant to Fla. Stat. § 501.211(1);

d. Award Plaintiff equitable relief, including enjoining Defendant from further violations, pursuant to Fla. Stat. §501.211(1);

e. Award Plaintiff costs and reasonable attorneys' fees pursuant to Fla. Stat. §501.2105; and,

f. Award any other relief the Court deems equitable and just.

Dated: January 8, 2025                    Respectfully submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq. (Lead Attorney)
Sulaiman Law Group, Ltd
2500 S Highland Ave, Ste. 200
Lombard, IL 60148

Telephone: (630) 575-8181
ataylor@sulaimanlaw.com

15